UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

ALBERT J. KAPPELL,

      Petitioner,

v.

UNITED STATES OF AMERICA,

      Respondent.
_____/

Case No. 2:07-CV-65
(Criminal Case No. 2:03:CR:02)

HON. GORDON J. QUIST

## OPINION

This Court has before it Albert J. Kappell's ("Petitioner") Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (docket no. 1). It also has the Government's Response (docket no. 7), the Government's Motion to Dismiss (docket no. 13), and Petitioner's Reply (docket no. 17). For the following reasons, Petitioner's § 2255 motion will be denied.

**I.**     **Procedural History.**

On October 10, 2003, Petitioner was convicted by a jury in this Court, before Judge McKeague, of nine counts of sexual abuse in violation of 18 U.S.C. §§ 2241(c) and 2244, based on his abuse of two minor female children who were members of the Keweenaw Bay Indian Community. When the abuse began, the children were six and three years old and were living on an Indian reservation with their mother and grandmother. On March 1, 2004, Judge McKeague sentenced Petitioner to life imprisonment, and Judgment was entered on March 2, 2004. Petitioner filed an appeal with the Court of Appeals for the Sixth Circuit, which affirmed the conviction and sentence on August 9, 2005. *See United States v. Kappell*, 418 F.3d 550 (6th Cir. 2006). Petitioner

filed a petition for writ of certiorari in the United States Supreme Court, which was denied on April 3, 2006. *See Kappell v. United States*, 547 U.S. 1056, 126 S.Ct. 1651 (2006).

On April 2, 2007, Petitioner filed this timely motion under 28 U.S.C. § 2255. In his motion, Petitioner claims that (1) his "counsel was ineffective for failing to argue that the Sixth Amendment was offended when the judge made findings regarding the circumstances of his prior conviction and then enhanced his sentence as a result of those findings;" and (2) his "counsel was ineffective for failing to argue on appeal that the trial judge abused his discretion for failing to excuse Juror Wetton for cause." (Pet.'s Mot. at 3, 12.)

## II.     Petitioner's First Argument was Already Decided on Appeal.

Petitioner relies on *United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738 (2005) and *Shepard v. United States*, 544 U.S. 13, 125 S. Ct. 1254 (2005) for his first argument that the Court violated his Sixth Amendment rights. In *Booker*, the Supreme Court addressed whether the federal sentencing guidelines and enhancement provisions violate a defendant's Sixth Amendment rights. The Supreme Court concluded that the mandatory federal sentencing guidelines are subject to the jury trial requirements of the Sixth Amendment. However, the application of the federal guidelines does not violate a defendant's constitutional rights so long as the guidelines are advisory rather than mandatory.

In *Shepard*, the Supreme Court addressed the extent to which information about prior convictions based on guilty pleas may be considered by a later sentencing court when determining the applicability of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), to convictions obtained under 18 U.S.C. § 922(g)(1) (felon in possession of a firearm). The Supreme Court limited the evidence a court may rely on to enhance punishment to (1) the terms of the charging documents; (2) a statement of the factual basis for the earlier charges shown by a transcript of the plea colloquy;

2

(3) a written plea agreement presented to the earlier court; or (4) a record of comparable findings of fact adopted by the defendant before entering the plea. *See Shepard*, 544 U.S. at 19-23, 125 S.Ct. at 1259-1261, 1263.

Petitioner argues that his counsel "was ineffective for failing to argue that the factual findings made by Judge McKeague violated *Booker* and *Shepard*." (Pet.'s Mot. at 4.) First, it is clear that Petitioner's appellate counsel did raise this issue on appeal because it is addressed in the Sixth Circuit opinion issued on August 9, 2005. *See United States v. Kappell*, 418 F.3d 550 (6th Cir. 2006). Second, this claim must be dismissed because the Sixth Circuit already considered and rejected this argument on appeal.

> We need not here determine the precise limits to the materials a sentencing court may consider in child sexual abuse cases, since we conclude that the materials that the district court relied upon in enhancing Kappell's sentence to life imprisonment were permissible and appropriate even under *Taylor* and *Shepard*. In determining that the state offense of which Kappell was convicted also would have been an offense under the federal statute, the district court had before it the state criminal complaint, a transcript of the state plea proceedings, and Kappell's acceptance in those proceedings of the factual statements in the complaint. We know of no convincing reason why the district court could not properly rely on those records in making its predicate offense determination.

*Kappell*, 418 F.3d at 559-560.

A § 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exceptional circumstances, such as an intervening change in the law. *See DuPont v. United States*, 76 F.3d 108, 110-11 (6th Cir. 1996); *see also Wright v. United States,* 182 F.3d 458, 467(6th Cir. 1999); *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999); *Oliver v. United States*, 90 F.3d 177, 180 (6th Cir. 1996). As a general rule, sentencing matters decided on direct appeal may not be relitigated under § 2255. *See DuPont*, 76 F.3d at 110-11. No such exceptional circumstances exist here.

3

### III. Petitioner's Counsel was not Ineffective for Failing to Appeal Judge McKeague's Decision not to Excuse Juror Wetton for Cause.

#### A. Background.

Petitioner's second claim alleges that Judge McKeague abused his discretion by not excusing an allegedly biased juror ("Juror Wetton") for cause, and that Petitioner's counsel was ineffective for failing to appeal the trial judge's decision.

During the jury selection phase, Juror Wetton informed Judge McKeague that her minor daughter had been fondled by her minor niece. Although Juror Wetton went to the police, no charges were filed. The following discussion between the judge, counsel, and Juror Wetton occurred:

> THE COURT: What we're trying to figure out is whether you would be still unhappy about anybody that might have been involved in what happened, and that you might take out that unhappiness on anybody involved in this trial.
>
> JUROR WETTON: No.
>
> THE COURT: Given that your daughter has indicated she was the subject of some sort of sexual abuse, do you think that you'd be able to fairly listen to the evidence of child sexual abuse in this case and make a decision based on the evidence that you see and hear here in court?
>
> JUROR WETTON: I believe so.
>
> THE COURT: Would the experience with your daughter make you unduly uncomfortable about this, given that you –
>
> JUROR WETTON: No.
>
> THE COURT: – have gone through something potentially similar to this case?
>
> JUROR WETTON: No, I don't think so.
>
> THE COURT: You think you can be fair?

4

JUROR WETTON:    Yep.

THE COURT:    Any questions, Mr. MacDonald?

MR. MacDONALD:    No, Your Honor.

THE COURT:    Mr. Denenfeld?

MR. DENENFELD:    I do have a couple of questions, Ms. Wetton. I sensed a distinct hesitation when the judge asked you about whether you were comfortable.

THE COURT:    The white noise is on, you can speak up.

MR. DENENFELD:    How the situation was handled, I got a feel from that you were not thrilled about the fact that the prosecution was never brought.

JUROR WETTON:    My hesitation was because of what we wanted out of it was for my niece to get some help, and that never happened.

MR. DENENFELD:    I see.

JUROR WETTON:    And that was why, at 14 years old – what happened was I read a journal my daughter was writing, and she said "what my cousin did to me." I realize it might have been wrong, because I didn't find out until then. I mean, you never think of your niece doing something.

MR. DENENFELD:    Right.

JUROR WETTON:    So that's how I would put it. And what we wanted out of it, my daughter, we wanted her to get counseling.

MR. DENENFELD:    You concluded that your daughter was telling the truth about what happened?

JUROR WETTON:    Yes.

MR. DENENFELD:    Do you believe that any child who makes allegations or says that they were abused necessarily is telling the truth or was never manipulated or massaged by anyone.

JUROR WETTON:    I think that there would have to be proof of that.

MR. DENENFELD:    Proof that it actually happened?

JUROR WETTON:    That it actually happened.

5

MR. DENENFELD: So simply a child saying it happened doesn't necessarily make it true in your mind until you hear evidence?

JUROR WETTON: I guess if they say that it happened, I'm going to – I'm going to want to further investigate that.

MR. DENENFELD: Well, would it –

JUROR WETTON: I mean, I wouldn't just leave it there.

MR. DENENFELD: Fair enough. If the allegations are that it happened, would it – would, in your mind, if that becomes the defense, would that become the defendant's job to prove that it didn't happen?

JUROR WETTON: That it did happen?

MR. DENENFELD: That it did happen.

JUROR WETTON: If –

MR. DENENFELD: All I'm really trying to get to is when you hear a child, or that a child has made a claim that they were sexually abused –

JUROR WETTON: I'm probably going to believe that child.

MR. DENENFELD: And what I'm asking is are you then going to believe that child until somebody proves to you that it didn't happen?

JUROR WETTON: I'm probably – yes, I'm probably going to believe the child.

MR. DENENFELD: Okay. So it would really be up to the person who was accused at that point to show you?

JUROR WETTON: Yes.

MR. DENENFELD: Fine. Thank you.

THE COURT: Ms. Wetton, you're being asked these questions without, of course, having been instructed about how to proceed in this case. There's nothing wrong with you walking in and saying that, in general terms, if a child says that, you would generally believe that child. If I instruct you as to how do you – as to how to go about determining whether the child is telling the truth or not, or making your own assessment as to whether the child is truthful or not, do you believe you'd be able to follow those instructions?

6

| | |
|---|---|
| JUROR WETTON: | Yes. |
| THE COURT: | Any other questions anybody had? |
| MR. MacDONALD: | No. |
| THE COURT: | Thank you, you may be seated. |
| | (Juror Wetton returned to the jury box.) |
| THE COURT: | Any challenge for cause of Ms. Wetton? |
| MR. MacDONALD: | No. |
| MR. DENENFELD: | Yes, the defense would challenge Ms. Wetton. |
| THE COURT: | On what basis? |
| MR. DENENFELD: | It seemed clear to me from her answer that she is inclined towards believing children, and would, in fact, shift the burden of proof. And while she did say that she would follow the law, it still was clear to me that her instinct in the case, which she was very honest about, is that once the allegation is made, the assumption is that the child was telling the truth, but she was clear that she would shift the burden of proof to us. |
| THE COURT: | What is the matter with a person coming into court and saying that, in general, they would believe a child if a child said they were a victim of sexual abuse? Do you really believe any citizen wouldn't say the exact same thing if they answered that honestly? |
| MR. DENENFELD: | Yeah, I do believe there are people who would say things – "I don't believe things unless they're proven to me." |
| THE COURT: | Challenge for cause of Wetton is denied. . . . And the reason for that, I believe, is that based on what Ms. Wetton said and based on her demeanor and the way she said it, that she'll follow the Court's instructions, and she is capable of independently evaluating the child's testimony, notwithstanding what she said. |

(Trial Tr. Volume I at 63-68.)  Thus, Judge McKeague did not excuse Juror Wetton for cause.

Further, Petitioner's trial counsel did not use a peremptory challenge to excuse Ms. Wetton. In fact,

only nine of Petitioner's ten peremptory challenges were used -- one remained left at the conclusion of jury selection. (Declaration of Christopher P. Yates ¶ 8.)

According to Petitioner's trial counsel, Paul J. Denenfeld:

5. Judge McKeague used the "12 in the box" jury selection method. Under this method, 12 prospective jurors - - and an additional alternate - - were randomly chosen from the jury panel and seated in the jury box. Those seated jurors were subjected to extensive voir dire by the Court and then counsel. Whenever a prospective juror in the box was excused either for cause or by a party's use of a peremptory challenge, a new prospective juror from the panel was seated in the excused juror's place.

* * * *

7. While the "12 in the box" method has its merits, one drawback from the defense perspective is that when counsel strikes a prospective juror they know something about, that juror will be replaced with a prospective juror counsel knows very little about. As a result, defense counsel will frequently hold in reserve an allotted peremptory challenge for fear that a replacement juror will be "worse" than the replaced juror and there will be no challenges remaining.

8. Mr. Yates and I, with input from Mr. Kappell, wrestled with how to best use our allotted peremptory challenges. Mr. Yates and I agreed that it was generally a sound strategy to not use the last peremptory challenge if at all possible for the reasons stated above. We employed that strategy in this case, particularly in light of the difficulty in finding unbiased jurors.

(Denenfeld Decl. ¶¶ 5-8.)

Petitioner's other attorney, Christopher P. Yates, states:

7. Because of the large number of possibly hostile potential juror [sic] who survived cause challenges, Mr. Denenfeld and I lacked a sufficient number of peremptory challenges to remove all of the potential jurors that we regarded as possibly hostile to Mr. Kappell. Accordingly, we had to make judgments about which jurors were least likely to hold Mr. Kappell's history of child sexual abuse against him in rendering a verdict.

8. After Mr. Denenfeld and I had exhausted all but one of our peremptory challenge [sic], we still concluded that the potential jurors in the jury box included people that we regarded as possibly hostile to Mr. Kappell. Nevertheless, we chose not to exercise our final peremptory challenge for

8

> fear that the replacement for the challenged juror would be even more hostile to Mr. Kappell. Our experience with jury selection left Mr. Denenfeld and me to conclude that it would be a greater risk to open a seat in the jury box by using our final peremptory challenge than to accept the jury that was seated in the jury box when we had one peremptory challenge left to exercise.
>
> 9. Although I regard the outcome of Mr. Kappell's prosecution as unfortunate for him, I would handle the exercise of peremptory challenges precisely the same way that Mr. Denenfeld and I did at Mr. Kappell's trial if I were to represent Mr. Kappell at a new trial. Throughout my career, I have never exercised a final peremptory challenge unless I did so with complete knowledge of the potential juror who would replace the one struck by the final peremptory challenge.

(Yates Decl. ¶¶ 7-9.)

### B. Test for Ineffective Assistance of Counsel.

The Sixth Circuit has reiterated the test for assessing ineffective assistance of counsel if an attorney does not file a notice of appeal.

> *Roe v. Flores-Ortega*, 528 U.S. 470, 120, S.Ct. 1029, 145 L.Ed.2d 985 (2000), announced that the test for assessing ineffective assistance of counsel for failure to file a notice of appeal is the familiar two-pronged inquiry of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See Roe*, 528 U.S. at 477, 120 S.Ct. 1029. The inquiry requires that a court first ask whether the trial counsel's performance fell below the reasonably accepted professional standard. Put another way, the court must assess whether "counsel's performance was constitutionally deficient such that he was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Magana v. Hofbauer*, 263 F.3d 542, 547 (6th Cir.2001). In assessing the attorney's conduct under Strickland's first prong, the Supreme Court said that "courts must 'judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct,' and 'judicial scrutiny of counsel's performance must be highly deferential.' " *Roe*, 528 U.S. at 477, 120 S.Ct. 1029 (citations omitted). The second component of the *Strickland* inquiry requires the court to determine whether the "counsel's deficient performance prejudiced the defendant." *Id*. To establish this prejudice, the petitioner must "demonstrat[e] that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." *Magana*, 263 F.3d at 547 (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052).
>
> . . . The Court . . . state[d] that it is "professionally unreasonable" for a lawyer to fail to file an appeal when specifically instructed to do so. *Roe*, 528 U.S. at 477. . . .

9

> Nevertheless, the *Roe* court rejected a *per se* rule that an attorney must always file an appeal unless specifically told otherwise, and determined that when the client has neither told his attorney to file an appeal nor told her not to file an appeal, courts must evaluate the attorney's performance by asking whether the attorney "consulted" with the defendant about the benefits and drawbacks of bringing an appeal. *Id.* at 478, 120 S.Ct. 1029. Consultation occurs when the attorney "advis[es] the defendant about the advantages and disadvantages of taking an appeal, and mak[es] a reasonable effort to discover the defendant's wishes." *Id.* If consultation has occurred, then "[c]ounsel performs in a professionally unreasonable manner only by failing to follow the defendant's *express instructions* with respect to an appeal." *Id.* (emphasis added). If, on the other hand, the counsel failed to consult with her client, then the court must address whether the failure to consult, by itself, is indicative of deficient performance. *See id.*

*Regalado v. U.S.*, 334 F.3d 520, 524 (6th Cir. 2003).

### C. Failure to Appeal Issue Was Not Ineffective Assistance of Counsel.

Here, Petitioner's counsel did file an appeal, but did not appeal this specific issue. In his declaration, Petitioner's appellate counsel, Paul L. Nelson, states:

> 3. To the best of my recollection, I did consider raising the issue regarding the seating of Ms. Wetton as a juror. However, it [sic] believe it was my opinion at the time that the issue should not be raised on appeal because the trial court's denial of the motion to excuse Ms. Wetton for cause was not prejudicial since the defense did not use a peremptory challenge to remove Ms. Wetton from the jury and a peremptory challenge still remained available to the defense when the jury was accepted and seated. I still hold this opinion.

(Nelson Decl. ¶ 3.)

Petitioner has not provided any evidence that he instructed his attorney to appeal this specific issue. Petitioner also has not stated that his attorney did not consult with him on the issue. Further, this Court finds that, even if no consultation on this specific issue occurred, Petitioner's counsel was not deficient.

Mr. Nelson is correct that Judge McKeague's decision not to remove Juror Wetton for cause was not prejudicial because Petitioner's trial counsel did not use the last peremptory challenge to

10

remove her. *See United States v. Salazar*, 528 U.S. 304, 318-19, 120 S.Ct. 774 (2000) (Scalia, J., concurring) ("The difficult question . . . is . . . whether normal principles of waiver (not to say the even more fundamental principle of *volenti non fit injuria*) disable a defendant from objecting on appeal to the seating of a juror he was entirely able to prevent. I would not find it easy to overturn a conviction where, to take an extreme example, a defendant had plenty of peremptories left but chose instead to allow to be placed upon the jury a person to whom he had registered an objection for cause . . . .").

Further, it is clear from the transcript that Judge McKeague considered the arguments against Juror Wetton and exercised his discretion in deciding not to excuse her. The judge rehabilitated Juror Wetton by questioning her extensively on her ability to be "fair." (Trial Tr. at 64.) She stated unequivocally that she could be fair and that she was not "unduly uncomfortable" about sitting as a juror on the case. (*Id.* at 64, 67.); *see, e.g., Miller v. Francis*, 269 F.3d 609, 616-18 (6th Cir. 2001). Furthermore, the trial judge asked, "If I instruct you as to how do you – as to how to go about determining whether the child is telling the truth or not, or making your own assessment as to whether the child is truthful or not, do you believe you'd be able to follow those instructions?" Juror Wetton answered, "Yes." (Trial Tr. at 67.)

This case involving Juror Wetton can be distinguished from other cases where the juror was equivocal in answering the judge's questions about being fair, or where the juror clearly stated that the juror would be partial to one of the parties. *See, e.g., Miller v. Webb*, 385 F.3d 666, 674-75 (6th Cir. 2004); *Hughes v. United States*, 258 F.3d 453, 459-60 (6th Cir. 2001). Here, Judge McKeague rehabilitated Juror Wetton, listened to arguments by both parties, and explained his reasoning for not dismissing Juror Wetton for cause. (Trial Tr. at 67-68.)

In cases involving a judge's decision not to excuse a juror for cause, the Court of Appeals for the Sixth Circuit "normally defer[s] to the assessment of the trial judge, who hears the

prospective juror's tone of voice and sees her demeanor." *Franklin v. Anderson*, 434 F.3d 412, 427 (6th Cir. 2006), *cert denied sub nom., Houk v. Franklin*, 127 S. Ct. 941 (2007). The test is whether the trial judge's failure to dismiss the juror constituted "manifest error and does not merit the presumption of correctness normally due trial court factual findings." *Id.* at 428. This is a very difficult standard to meet, and Petitioner's attorney concluded that other arguments were stronger on appeal. Thus, even if counsel did not consult with Petitioner about this specific issue, counsel was not deficient.

        **D.**        **Failure to Strike Juror Wetton Was Not Ineffective Assistance of Counsel.**

Furthermore, although Petitioner did not explicitly raise this specific claim, the Court finds that Petitioner's trial counsel was not ineffective for failing to use a peremptory challenge to excuse Juror Wetton.

First, where a claim of ineffective assistance of counsel is founded upon a claim that counsel failed to strike a biased juror, the petitioner must show that the juror was actually biased against him. *See Miller v. Francis*, 269 F.3d 609, 616 (6th Cir.2001)); *Hughes v. United States*, 258 F.3d 453, 458 (6th Cir.2001) ( "To maintain a claim that a biased juror prejudiced him, however, [Petitioner] must show that the juror was actually biased against him."). This Petitioner has failed to do.

Second, Mr. Denenfeld and Mr. Yates explained that they decided not to excuse Juror Wetton "for fear that the replacement for the challenged juror would be even more hostile to Mr. Kappell." (Yates Decl. ¶ 8.)

> Counsel, like the trial court, is granted "particular deference" when conducting voir dire. *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001). "'An attorney's actions during voir dire are considered to be matters of trial strategy . . . . A strategic decision cannot be the basis for a claim of ineffective assistance unless counsel's decision is shown to be so ill-chosen that it permeates the entire trial with obvious unfairness.'" *Miller v. Webb*, 385 F.3d 666, 672-73 (6th Cir. 2004) (quoting *Hughes*, 258 F.3d at 457).

*Keith v. Mitchell*, 455 F.3d 662, 676 (6th Cir. 2006); *see also Harris v. Konteh*, 198 F. App'x 448, 455 (6th Cir. 2006) (it was not ineffective assistance of counsel for trial counsel in an assault prosecution not to challenge for cause or to remove by peremptory challenge juror whose son was a police detective).

The standard under the *Strickland* deficiency prong is whether Petitioner's counsel provided "reasonably effective assistance," and "whether counsel's conduct <u>so undermined</u> the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686-87, 104 S. Ct. at 2064 (emphasis added). There is a presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and, to prevail, Petitioner must meet the burden of showing that counsel's representation fell below an objective standard of reasonableness. *Id.* at 688-89, 104 S. Ct. at 2064. The Court must also not indulge in hindsight, but must evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors. *Id.* at 690, 104 S. Ct. at 2065-66.

In his Reply, Petitioner requests an evidentiary hearing because he "feels that there are factual disputes concerning the strategy used by both trial counsel's." (Reply at 1.) Specifically, he points to a statement by Mr. Denenfeld:

> 10. Mr. Yates and I, now law partners, still talk about the Kappell case and our disappointment with Mr. Kappell's conviction and life sentence. One can always look back at a lost case and second guess decisions that were made. I am certain I made decisions in the trial that I would make differently if I could do it over again.

(Denenfeld Decl. ¶ 10.) Petitioner states that, "Although Counsel Denefeld did not directly say that his failure to strike Juror Wetton was a mistake, his statement can be interpreted as a candid admission that failing to use the last peremptory challenge to strike Juror Wetton was a mistake." (Reply at 2.)

13

The Court does not read Mr. Denenfeld's statement the same way as Petitioner does. As stated above, the Court "must also not indulge in hindsight, but must evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors." Mr. Denenfeld's decision not to excuse Juror Wetton, at the time it was made, was sound trial strategy and did not fall below an "objective standard of reasonableness." Attorneys may always "second guess" certain strategic decisions, but that does not rise to the standard required for ineffective assistance of counsel. In fact, the old saying among trial lawyers is that there are always three "trials": the one you plan, the one you try, and the one you wish you had tried.

Although the Sixth Circuit has observed that a § 2255 petitioner's burden for establishing an entitlement to an evidentiary hearing is "relatively light," *Smith v. United States*, 348 F.3d 545, 550 (6th Cir. 2003), no hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions rather than statements or fact. *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999). Here, there are no factual issues in dispute. Petitioner does not claim that he specifically asked for an appeal on this issue, and he has not provided an affidavit that raises contradictory facts that must be considered by the Court. Thus, the Court finds that an evidentiary hearing is not warranted.

### IV.     No Certificate of Appealability.

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Court of Appeals for the Sixth Circuit has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.

*Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard.

Under *Slack*, 529 U.S. at 484, 120 S. Ct. at 1604, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." The Court finds that reasonable jurists could not find that this Court's denial of Petitioner's claims was debatable or wrong.

## Conclusion

For these reasons, Petitioner's § 2255 Motion (docket no. 1) will be DENIED. A certificate of appealability will be DENIED.

A separate order will issue.


Dated: June 20, 2008                             /s/ Gordon J. Quist
                                                    GORDON J. QUIST
                                         UNITED STATES DISTRICT JUDGE